## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CARLYLE INVESTMENT MANAGEMENT )
LLC, et al., )
)
     Plaintiffs, )
)
     v. ) Civ. No. 12-1732-SLR
)
PLAZA MANAGEMENT OVERSEAS S.A., )
et al., )
)
     Defendants. )

## **MEMORANDUM ORDER**

At Wilmington this 14th day of August, 2013, having reviewed plaintiffs' motion to

remand and the papers filed therewith;

IT IS ORDERED that said motion (D.I. 9) is granted, for the reasons that follow:

1. **Procedural background.** Plaintiffs in this case are (1) three entities affiliated

with The Carlyle Group, (2) the three founders of Carlyle, and (3) three Carlyle-affiliated

former directors of Carlyle Capital Corporation limited ("CCC").[1]  Plaintiffs brought this

action in the Delaware Court of Chancery against Louis J.K.J. Reijtenbagh

("Reijtenbagh") and three companies he controls, Moonmouth Company, S.A.

("Moonmouth"), Plaza Management Overseas, S.A. ("Plaza"), and Parbold Overseas

---

[1]The Carlyle entities are Carlyle Investment Management LLC ("CI"), TC Group,
LLC ("TC Group"), and TCG Holdings, LLC ("TCGH") (collectively, "Carlyle").  The
founders of Carlyle are David M. Rubenstein, Daniel A. D'Aniello, and William E.
Conway, Jr.; the Carlyle-affiliated directors of CCC are James H. Hance, John C.
Stomber, and Michael J. Zupon.  (D.I. 10 at 1 n.1)

Ltd. ("Parbold") (collectively, the "Reijtenbagh defendants"), as well as a Dutch entity,
Stichting Recovery CCC ("SRCCC").  Plaintiffs seek to enforce a forum selection clause
requiring litigation only in Delaware state court, as well as several releases from liability.
Defendant Plaza removed the case to this court; plaintiffs seek remand on the grounds
that removal was procedurally defective and in violation of the forum selection clause.

2. **Factual background.**  CCC was an investment fund incorporated in
Guernsey in August 2006.  It invested primarily in AAA-rated residential mortgaged-
backed securities issued by Fannie Mae and Freddie Mac with the implied guarantee of
the U.S. government.  In December 2006, Reijtenbagh, acting through Plaza, caused
Moonmouth to purchase three million CCC Class B shares for $60 million.  On
December 20, 2006, Plaza executed a Subscription Agreement on Moonmouth's behalf
("the Agreement"), which Agreement was countersigned on CCC's behalf.  (D.I. 11, ex.
1)  Subsequently, in 2007, Reijtenbagh caused Moonmouth to transfer one million
shares to Parbold.

3. In March 2008, CCC was placed into liquidation after the "sudden and
unprecedented global financial crisis" depleted its cash reserves.  (D.I. 10 at 4)  By
letters dated June 7, 2012 written on behalf of Moonmouth[2] and SRCCC by Dutch
counsel, defendants alleged that Carlyle "took irresponsible and unacceptable risks" in
connection with the investments it managed, and would hold Carlyle "liable [under
Dutch law] . . . for all damages . . . that the investors sustained and any and all damage

---

[2]By means of said letter, Moonmouth was also writing "on behalf of . . . Plaza
Management Overseas S.A. . . . Parbold Overseas, Ltd. . . . [and] Mr. L.J.K.J. (Louis)
Reijtenbagh. . . ."  (D.I. 11, ex. 2 at 8)

that they will sustain in the future in connection with the CCC shares." (D.I. 11, exs. 2, 3) Soon thereafter, on July 13, 2012, Parbold was dissolved.

4. In response to the June 2012 correspondence, plaintiffs filed the instant complaint in the Court of Chancery to enforce the Agreement's forum selection clause as well as certain contractual releases from liability. On November 19, 2012, plaintiffs served Moonmouth, Plaza, and Parbold. Moonmouth was dissolved on November 26, 2012.[3] Having requested and received plaintiffs' consent to an extension of time to answer plaintiffs' first amended complaint, Plaza filed a notice of removal pursuant to 28 U.S.C. § 1446. Plaintiffs timely filed the instant motion to remand.

5. Paragraph 8 of the Agreement contains the following forum selection clause:

> The courts of the State of Delaware shall have exclusive jurisdiction over any action, suit or proceeding with respect to this Subscription Agreement and the Investor hereby irrevocably waives, to the fullest extent permitted by law, any objection that it may have, whether now or in the future, to the laying of venue in, or to the jurisdiction of, any and each of such courts for the purposes of any such suit, action, proceeding or judgment . . ., and the Investor hereby submits to such jurisdiction.

(D.I. 11, ex. 1, ¶ 8) The Agreement also specifies that it "shall be binding upon the Investor and the heirs, personal representatives, successors, and assigns of the Investor," and that its "terms and provisions [ ] shall be governed, construed and enforced solely under the laws of the State of Delaware." (Id. at ¶ 7)

6. **Standard of review.** The federal removal statute, 28 U.S.C. § 1441, is strictly construed, requiring remand to state court if any doubt exists over whether

---

[3]SRCCC was also dissolved, although it is not clear from the record when that occurred.

3

removal was proper. The party seeking removal bears the burden of proving that removal is proper. *See Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26 (3d Cir. 1985); *Carlyle Investment Management, LLC v. Carlyle Capital Corp. Ltd.,* 800 F. Supp. 2d 639 (D. Del. 2011). The burden is especially heavy when a party seeks removal in order to avoid the effect of a legally enforceable forum selection clause. *Cf. Ingres Corp. v. CA, Inc.,* 8 A.3d 1143 (Del. 2010).

7. With limited exceptions, a defendant may remove a case to federal court only with the unanimous consent of all co-defendants. *See Balazik v. Cnty. of Dauphin,* 44 F.3d 209, 213 (3d Cir. 1995). The unanimous consent requirement is waived only for defendants who are unknown or nominal parties, fraudulently joined, or not served as of the date of removal. *Id.* at 213 n.4. With respect to the first exception, a "defendant is nominal if there is no reasonable basis to impose, or legal possibility of, legal liability." 16 *Moore's Federal Practice,* § 107.11[1][d], at 107-43 (3d ed. 2012); *see also Farias v. Bexar County Bd. of Trustees,* 925 F.2d 866, 872 (5th Cir. 1991) (non-moving defendants deemed nominal parties where "plaintiff could in no way establish a cause of action" against them).

8. **Analysis.** The Notice of Removal at bar identifies only Plaza as the filing party. There is agreement that neither Reijtenbagh nor SRCCC had been served at the time of removal, making their consent unnecessary. Although it is not clear when Parbold was served, the record indicates that it had been dissolved months before the instant lawsuit was filed. The first dispute that needs to be addressed, then, is whether the consent of Moonmouth and Parbold is excused because they are nominal parties

4

due to their dissolution.

9. The dissolved defendants were incorporated under the laws of the British Virgin Islands ("BVI"); under the law of the BVI, a dissolved company ceases to exist for all purposes. (D.I. 23, ex. A, ¶¶ 7, 17-21) More specifically, under the law of the BVI, a dissolved company can neither be sued, and the company can take no action whatsoever. (Id. at ¶¶ 7, 21) Since both Moonmouth and Parbold ceased to exist under the law of the BVI at the time of their dissolution, there is no legal possibility of their legal liability. Accordingly, both Moonmouth and Parbold are nominal parties, and their consent to removal is neither possible nor required.⁴

10. Having determined that removal was not procedurally defective, the question remains whether the exclusive forum selection clause in the Agreement constitutes grounds for remand. In the first instance, Plaza does not contend that the forum selection clause is invalid, only that it cannot be enforced because: (1) Plaza is a non-signatory to the Agreement; (2) the exclusive forum covenant has been released; and (3) the exclusive forum covenant is inapplicable because there is no dispute related to the Agreement.

11. With respect to the status of Plaza as a non-signatory, the record demonstrates that Plaza and Reijtenbagh represented Moonmouth (the investor) at the time the Agreement was executed. Indeed, Plaza was the sole director of Moonmouth

_____

⁴The court notes in this regard that, although Moonmouth and Parbold can be "restored to the register" under the BVI Business Companies Act, 2004 §§ 218, 218A, the former directors of Moonmouth and Parbold applied for reinstatement in December 2012 in order to enable those entities to consent to removal, which applications were denied without prejudice to the right of plaintiffs to make such applications. (Id., ¶¶ 12-15; D.I. 24, ex. 1)

5

and, in that capacity, resolved as follows:

> FIRST: to subscribe to Carlyle Credit Corp. Limited, a private limited company for an amount of 60,000.000 Euro (sixty million Euro)
>
> SECOND: to authorize and herewith is authorized that PLAZA Management Overseas S.A., Sole Director of the Company, sign all the subscription documents on behalf of the company.

(D.I. 11, ex. 1) In addition to being involved in the initial investment at issue in this litigation, the June 7, 2012 letter that gave rise to the litigation was written on behalf of Moonmouth, Plaza and Reijtenbagh. (D.I. 11, ex. 2)

12. Courts have recognized that a forum selection clause may be enforced against a non-signatory "where the parties are closely related in [a] way that it is foreseeable that the non-signatory will be bound." *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 159 (E.D.N.Y. 2012); *see also, Hadley v. Shaffer*, Civ. No. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003) at \*6 ("Forum selection clauses bind nonsignatories that are closely related to the contractual relation or that should have foreseen governance by the clause.") (citation omitted). The record demonstrates that Plaza was intimately involved in the investment at issue, executing the Agreement on behalf of the investor. Especially in light of the "directions for the completion of the subscription documents" included in the Agreement (D.I. 11, ex. 1), the court concludes that Plaza was closely related to the contractual relation and that Plaza should have foreseen governance by the clause.

13. As to the next objection raised by Plaza, the court agrees with plaintiffs that the issue of whether the forum selection clause can be enforced against Plaza should

6

be determined before the question of whether the entire Agreement is invalid because it was released by various Transfer Agreements (as argued by Plaza) is addressed. In other words, only a court in the proper forum should address the substantive issue of how to interpret the various documents at play in this complicated transaction.

14. With respect to the last ground raised by Plaza, the court embraces the reasoning of the courts in *Huffington v. T.C. Group, LLC*, 637 F.3d 18 (1st Cir. 2011) (another case involving the sale of securities by plaintiffs), and *Ashall Homes Ltd. v. ROK Entm't Grp., Inc.*, 992 A.2d 1239 (Del. Ch. 2010). That is, all of the claims at bar ultimately involve defendants' "initial decision to invest, their execution of the [Agreement], and the parties' performance of their obligations under [the Agreement]." *Id.* at 1253. Indeed, as recognized by the court in *Huffington*, forum selection clauses have varying purposes, but a significant one to parties such as plaintiffs is that of centralization because

> where, as here, a security is being offered to a range of customers[, it is helpful] to concentrate all related litigation in a single forum. This assures the defendant that it will be able to litigate all of the actions in one place convenient to it; that one set of rules will apply; that consolidation may be readily available; that inconsistent outcomes can be minimized; and that a single lead precedent can control all cases.

637 F.3d at 22-23. The court concludes in this regard that the dispute at bar is closely related to the Agreement.

15. **Conclusion.** The court concludes that, although removal was not procedurally defective, remand is required because the forum selection clause at issue

is valid and enforceable against the removing party, Plaza.[5]

United States District Judge

---

[5]The court leaves to the Court of Chancery Plaza's motion to dismiss.  (D.I. 6)